John J. NERI; P. Lauren Neri; and Thomas Comer, Administrator CTA of the Estates of Rose Marie Neri and John E. Neri, Plaintiffs,

v.

**R.J. REYNOLDS TOBACCO COMPANY, Defendant.**

No. 5:98–CV–371(FJS/GJD).

United States District Court, N.D. New York.

Sept. 19, 2001.

Wiggins & Mason, LLP, Ithaca, NY (Erin E. McKinley, Lorraine Moynihan Schmitt, of counsel), Office of Mannie Neri, Clay, NY (Mannie Neri, of counsel), for plaintiffs.

Jones, Day, Reavis & Pogue, Columbus, OH (Jeffrey J. Jones, Elizabeth P. Kessler, J. Todd Kennard, of counsel), Saperston & Day, P.C., Syracuse, NY (Diane M. Martin–Grande, of counsel), Coughlin & Gerhart, L.L.P., Binghamton, NY (Richard B. Long, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiffs John J. Neri ("John Jr.") and P. Lauren Neri,[1] together with Rose Marie Neri, the Executor of the Estate of her husband John E. Neri ("John Sr."),[2] commenced this action on February 2, 1998. They alleged the following causes of action on behalf of John Sr. and John Jr.: (1) intentional misrepresentation and fraud; (2) strict liability; (3) negligence; and (4) breach of express and implied warranties. In addition, Plaintiff Rose Marie Neri filed claims for loss of consortium and wrongful death; and Plaintiff P. Lauren Neri brought a claim for loss of consortium. All of these claims were based upon Plaintiffs' allegation that Defendant's cigarettes caused John Sr. and John Jr. to contract (and in the case of John Sr. to die from) emphysema.

In a Memorandum–Decision and Order, dated September 28, 2000, the Court granted Defendant's motion for summary judgment with respect to most of Plaintiffs' claims. Thus, the only remaining claims are those based upon (1) strict liability for failure to warn prior to 1969; (2) negligent failure to warn prior to 1969; (3) wrongful death and loss of consortium; and (4) punitive damages. Moreover, the Court explicitly declined to address the statute of limitations issue with respect to Plaintiffs' failure to warn claims because the parties briefed the issue "in such a conclusory manner that the Court c[ould not] discern when John Sr. and John Jr. discovered the 'primary condition' on which their claims are based." *See* Memorandum–Decision and Order, dated September 28, 2000, at 34. The Court also provided Defendant with forty-five days in which to renew its motion for summary judgment. *See id.* at 45.

Presently before the Court is Defendant's renewed motion for summary judgment, asserting that Plaintiffs' failure to warn claims fail for five independent reasons: (1) the claims are barred by New York's three-year statute of limitations; (2) Defendant had no duty to provide additional warnings about the risks of smoking, including the risk of emphysema; (3) Plaintiffs have not identified any specific information about emphysema that Defendant allegedly knew and that it failed to disclose or that was not otherwise available to the public; (4) Plaintiffs cannot show that any alleged warning would have caused them to do anything differently; and (5) even if Plaintiffs could make the requisite showing, they could not prove

---

**1.** P. Lauren Neri is John Jr.'s wife.

**2.** Rose Marie Neri passed away on January 11, 2000. Thomas Comer has been substituted as Plaintiff in her place.

that their injuries would have been avoided in such circumstances.

In addition to its renewed motion for summary judgment, Defendant also moved (1) to sever Plaintiffs' claims and for a separate trial; (2) to exclude Dr. Pollay's testimony and to strike Plaintiffs' reference to Dr. Pollay's prior testimony; (3) to file under seal and *in camera* the affidavit of Robert McDermott, and (4) to strike the documents attached to the affidavit of Erin McKinley. The Court will address these motions *seriatim*.

## II. DISCUSSION

### A. Defendant's motion for summary judgment

Section 214–c(2) of New York Civil Practice Law and Rules provides that the time for commencing a cause of action for damages resulting from exposure to a harmful substance begins to run from the date that the "injury" was discovered or could have been discovered with reasonable diligence. The seminal case interpreting C.P.L.R. § 214–c(2) is *Wetherill v. Eli Lilly & Co.*, 89 N.Y.2d 506, 655 N.Y.S.2d 862, 678 N.E.2d 474 (1997). The specific issue in that case was "whether an 'injury' is discovered within the meaning of CPLR 214–c(2) when the symptoms become apparent or instead when the connection between those symptoms and the injured's exposure to a toxic substance is recognized." *Id.* at 509, 655 N.Y.S.2d 862, 678 N.E.2d 474. The New York Court of Appeals held that the statute of limitations begins to run "when the injured party discovers the primary condition on which the claim is based." *Id.*

In *Wetherill*, the plaintiff was treated in 1978 or 1979 for dysplasia, a diagnosis indicating a "pre-cancerous" condition in her cervix. Thereafter, she suffered four successive miscarriages in 1980 or 1981,

1984, early 1986 and late 1986. In 1987, the plaintiff learned that she had a T-shaped uterus, and she underwent surgery for the removal of adhesions and uterine septum. Less than a year later, she delivered a preterm baby after 24 weeks of gestation, but the baby did not survive. Several months later, the plaintiff was advised that she had an "incompetent" cervix, and she was subsequently treated for that condition.

The plaintiff testified at her deposition that it was not until shortly after her 1998 preterm delivery that she learned that her mother may have taken DES, which might have affected the plaintiff's reproductive health. The plaintiff had not previously heard about that drug. The plaintiff did not immediately pursue the matter by asking her mother directly whether she had taken DES. Rather, she waited until late 1989, at which time she overheard the physician who was treating her for her current pregnancy tell a medical assistant that the plaintiff's medical history revealed "classic symptoms of DES."

The plaintiff commenced her suit against several DES manufacturers on August 14, 1992. The defendants moved for summary judgment on the ground that the claim was time-barred because it was commenced more than three years after the plaintiff had discovered the reproductive ailments that formed the basis of her claim. The plaintiff opposed the motion, arguing that the time to commence her action did not begin to run until late 1989, when she overheard the conversation between her physician and his assistant and thereby learned that her symptoms were likely to be DES-related.

The New York Court of Appeals rejected the plaintiff's argument. The court found that since the plaintiff unquestionably knew about the medical conditions that formed the basis of her complaint

more than three years before she commenced the action, she could succeed only if " 'discovery of the injury' is not complete within the meaning of the statute until the injured party discerns both the bodily symptoms and the fact that those symptoms have a nonbiological cause." *Id.* at 511, 655 N.Y.S.2d 862, 678 N.E.2d 474. The court noted that the plaintiff's theory had some appeal because "it would benefit potential claimants whose symptoms, like plaintiff's, were ambiguous and are not always associated with exposure to a foreign substance." *Id.* Nonetheless, the court concluded that the plaintiff's interpretation of C.P.L.R. § 214–c(2) was "out of harmony with the statutory design and is unsupported by the provision's legislative history." *Id.* Therefore, the court held that since the plaintiff had known of the primary conditions that formed the basis of her claim—her dysplasia, her miscarriages, her misshapen uterus, and her incompetent cervix—by 1988, her 1992 action was properly dismissed because it was commenced more than three years after her "discovery of the injury."

In closing, the court noted its general agreement with the proposition that "CPLR 214–c is a remedial measure and that, as such, it should be liberally construed to effectuate its purposes." *Id.* at 514, 655 N.Y.S.2d 862, 678 N.E.2d 474 (citations omitted). Nonetheless, the court stated that "[e]ven with that axiom of statutory construction, . . ., [it] was obliged to interpret the statute in a way that makes sense in light of both the legislative design and the specific problem that the provision was adopted to remedy." *Id.* The court further explained that "there is nothing in either the language of the statute or its history to suggest that the Legislature intended to make the running of the Statute of Limitations depend on claimants' subjective understanding of the etiology of their conditions." *Id.* at 514–15, 655

N.Y.S.2d 862, 678 N.E.2d 474. The court also noted its disagreement with the dissent's interpretation and rationale, which the court stated would result in "the date for commencing an action under CPLR 214–c(2) [depending] on such fortuitous circumstances as the medical sophistication of the individual plaintiff and the diagnostic acuity of his or her chosen physician." *Id.* at 515, 655 N.Y.S.2d 862, 678 N.E.2d 474 (footnote omitted).

Applying the reasoning in *Wetherill* to the facts of the present case leads the Court to the inescapable conclusion that Plaintiffs' failure to warn claims are time-barred. With respect to John Sr., there is overwhelming evidence that he knew about the medical condition that formed the basis of his complaint more than three years before the present action was filed. In fact, there does not appear to be any evidence to the contrary. Although Plaintiffs assert that John Sr.'s claims are timely, the evidence they point to does not support their contention. For example, John Sr.'s wife, Rose Neri, testified at her deposition that John Sr. knew that he had emphysema at least a couple of years before he passed away because Dr. Aiello told him "[t]hat he had emphysema and it was caused by the cigarettes." *See* Transcript of the Deposition of Rose Neri, dated July 27, 1999 ("R. Neri Tr."), at 77. When asked specifically, "What's the earliest diagnosis of emphysema that you recall for your husband?", Mrs. Neri responded, "Just a couple of years before he died." *See id.* at 91. John Sr. died on July 10, 1996, thus, a couple of years before he died, would have been sometime in 1994—more than three years before this action was commenced on February 2, 1998.

Mrs. Neri's testimony is consistent with the other evidence in this case. Plaintiff's own expert, Dr. David J. Davin, wrote a letter stating that "[t]he medical record of

John E. Neri is replete with evidence that amply demonstrates both the chronicity as well as the severity of his COPD [chronic obstructive pulmonary disease][3] well before his January 6, 1993 coronary bypass surgery and his initial pulmonary evaluation conducted by Dr. Aiello later that year." *See* Letter of David J. Davin, M.D. to Erin McKinley, Esq., dated November 1, 1999. Moreover, Dr. Davin testified at his deposition that there is "[n]o doubt in my mind, no doubt whatsoever that Mr. Neri had substantial chronic obstructive pulmonary disease before his surgery on January 6[, 1993], . . ." *See* Transcript of Deposition of David J. Davin, M.D., dated November 19, 1999, at 110. He explained further that "this individual had substantial COPD before he was put to sleep on January 6, 1993. I'm a hundred percent certain of that. . . ." *See id.* at 187. Likewise, in a letter Dr. Aiello wrote to Dr. Dube on November 18, 1993, he stated that "[w]e have clear cut evidence of . . . obstructive airways disease, . . . which I think should be addressed therapeutically at this time." *See* Letter of Dr. Aiello to Dr. Dube, dated November 18, 1993. Similarly, at his deposition, Dr. Aiello testified that "on the day that I saw [John Sr., November 10, 1993], . . . what I saw on the pulmonary function testing was related to his obstructive airways disease." *See* Transcript of Deposition of Thomas R. Aiello, M.D., dated December 13, 1999 ("Aiello Tr."), at 134. Based upon this evidence, much of which Plaintiffs' own experts supplied, the Court concludes that John Sr. knew about the primary condition upon which his claims are based more than three years prior to the commencement of this action. Accordingly, the Court grants Defendant's motion for summary judgment with respect to John Sr.'s failure to warn claims, as well as the loss of consortium, wrongful death, and punitive damages claims related to those causes of action.

The same result befalls John Jr.'s claims. It is undisputed that the symptoms of emphysema are shortness of breath, difficulty breathing, and sometimes wheezing. *See* Transcript of Deposition of William A. Farone, M.D., dated September 22, 1999, Vol. I at 29 ("[W]henever there's a disease, there are certain symptoms associated with that disease, for example with emphysema. It's shortness of breath, difficulty breathing. So, if there's a diagnosis that he has emphysema, he has those symptoms."); Transcript of Deposition of John H. Sipple, M.D., dated December 7, 1999, at 64 (stating that the most significant symptoms of emphysema are "cough, shortness of breath . . . [and] sometimes [wheezing]."); Transcript of Deposition of Steven R. Lindemann, M.D., dated November 12, 1999, at 27 (stating that the "symptoms [of emphysema] can be shortness of breath, coughing, frequent infections."). Nor is there any dispute that John Jr. suffered shortness of breath and at least some coughing more than three years before this action was commenced. What is at issue is whether these symptoms were significant enough to put John Jr. on notice of the injury that forms the basis of his claims.

To support its position that John Jr. had notice of his injury more than three years prior to the commencement of this action, Defendant points to the following excerpt from John Jr.'s deposition testimony:

Q: Why did you try to cut down [on your smoking] in your late 20s?[4]

---

3. Emphysema is a form of COPD.

4. At the time of his deposition, John Jr., who was born on June 26, 1944, was 55 years old. Thus, if he attempted to stop smoking in his late 20s because of being winded and short of breath, he would have been aware of these symptoms more than 20 years ago.

A: I felt myself getting a little winded and thought maybe I was smoking too much.

Q: You were getting a little short of breath?

A: Yes.

Q: And you thought that it might be attributable to smoking?

A: And coughing.

Q: So, you were coughing and getting winded and you thought it might be attributable to smoking?

A: Yes.

*See* Transcript of Deposition of John J. Neri, dated July 28, 1999, at 120–21.

In addition, in a December 31, 1996 letter to Dr. Kaufman, Dr. Aiello wrote that John Jr., who was 52 at the time, "complains of shortness of breath with exertion. It has really been present for many years." *See* Appendix to Defendant's Memorandum of Law at Tab "C."

Coupled with this testimony is the fact, as Plaintiffs point out, that in 1984 Congress required cigarette packages to warn that smoking caused emphysema. In addition, John Jr. reported to Plaintiffs' expert, Dr. Cummings, that he "first became aware of the health issues related to smoking in the mid–1960's when the Surgeon General's Report was released, but figured this was just a 'government overreaction.' " *See* Report of Dr. Cummings at ¶ 7.3. Moreover, according to the testimony of John Jr.'s wife, John Jr. never doubted the Surgeon General's warnings (which included specific warnings related to emphysema) and never thought that smoking was safe. *See* Transcript of Deposition of P. Lauren Neri, dated August 25, 1999, at 91. Moreover, John Jr.'s wife had many discussions with him about smoking and health and repeatedly asked him to cut back on his smoking. *See id.* at 49–51. Finally, John Jr.'s doctor "beat [him up]

pretty significantly about his smoking," telling him to stop smoking every time he saw him. *See* Transcript of Deposition of David H. Dube, M.D., dated November 20, 1999, at 49, 85.

To counter this evidence, Plaintiffs direct the Court's attention to the deposition of Dr. Aiello, at which, when asked whether he knew when John Jr. first acquired COPD, he responded, "All I can do is refer to my note once again, 12/31/96, which states that his shortness of breath with exercise has been present for many years and that's as specific as Mr. John J. Neri could be about that, without objective data that would document that, the history on the patient is of paramount importance." *See* Aiello Tr. at 45. Plaintiffs also point to the deposition of John Jr., at which he testified that Dr. Kaufman had diagnosed him with emphysema and had sent him to Dr. Aiello. He stated that Dr. Kaufman "noticed that I had a bad, bad breathing problem and said I better see a lung doctor fast. He said I had the lungs of an 81–year–old man." *See* Transcript of Deposition of John J. Neri, dated July 28, 1999, at 151. John Jr. also testified that prior to Dr. Kaufman, no other doctor had indicated to him that he had emphysema or a lung problem. *See id.* at 152–53. Finally, John Jr. testified that he did not think he had a wheezing problem prior to 1996 and that "maybe, yes" until that time the cough had not been a chronic problem. *See id.* at 185–86.

Plaintiffs' argument that John Jr.'s claims are not time-barred because he had no notice of the primary condition upon which his claim is based until he was diagnosed with emphysema in late 1995 rests substantially upon a footnote in *Wetherill*. In that footnote, the court stated that "[w]e recognize that there may be situations in which the claimant may experience early symptoms that are too isolated or

inconsequential to trigger the running of the Statute of Limitations under CPLR 214–c(2)." *Wetherill,* 89 N.Y.2d at 514 n. 4, 655 N.Y.S.2d 862, 678 N.E.2d 474. In *Wetherill,* the court did not have to decide where this threshold lies because the plaintiff was formally diagnosed as having the serious abnormalities for which she sought recovery more than three years prior to the commencement of the suit.

Relying upon *Wetherill,* Plaintiffs assert that John Jr.'s symptoms prior to 1996 were "isolated" and "inconsequential." They point to the fact that it was not until 1996, after his diagnosis of emphysema in December 1995, that John Jr. had to discontinue his car business, that he completely lost his breath upon exertion, that he experienced wheezing, and that his coughing was a chronic problem. Prior to that time, Plaintiffs contend that John Jr.'s employment and recreational activities were not sufficiently intruded upon or impacted by his symptoms and, therefore, the statute of limitations did not begin to run, at the earliest, until the diagnosis in December 1995.

This argument, however, is contradicted, at least in part, by Plaintiffs' own expert, Dr. Aiello, who stated that in December 1995 John Jr. told him that he had experienced shortness of breath with exercise for many years. Moreover, the fact that John Jr. tried to stop smoking more than twenty years ago because he felt himself short of breath and had a cough and linked these problems to smoking too much leads the Court to conclude that John Jr.'s symptoms were not isolated or sporadic prior to 1996 and that he had an awareness of the probable cause of his condition. The fact that John Jr.'s symptoms did not reach the point at which he thought it necessary to consult a doctor until December 1995 does

not dictate otherwise. *Cf. Whitney v. Quaker Chem. Corp.,* 90 N.Y.2d 845, 847, 660 N.Y.S.2d 862, 683 N.E.2d 768 (1997) ("Neither plaintiff's contention that his symptoms worsened or changed in 1991 nor the diagnosis of a doctor he first visited in September 1991 that substances other than the coolant caused his injury makes his claim timely. All that is necessary to start the limitations period is that plaintiff be aware of the primary condition for which damages are sought."); *Ferreri v. McGhan Med. Corp.,* No. 95 CIV. 6189, 1997 WL 580714, *3 (S.D.N.Y. Sept.17, 1997) ("Under New York law, neither erroneous diagnoses [n]or progressive deterioration of a patient's condition tolls the statute of limitations." (citations omitted)).

Furthermore, *Wetherill* does not stand for the proposition that a plaintiff has not discovered the primary condition upon which his claims are based until he becomes totally incapacitated by his symptoms. To the contrary, all that *Wetherill* requires is that the plaintiff's symptoms not be inconsequential or isolated. *See Wetherill,* 89 N.Y.2d at 514 n. 4, 655 N.Y.S.2d 862, 678 N.E.2d 474. The record is clear that John Jr.'s symptoms met the *Wetherill* standard long before this action was commenced. By his own admission, John Jr. experienced coughing and had trouble breathing when exerting himself for many years prior to the formal diagnosis that he suffered from emphysema. Admittedly, his symptoms worsened as he continued to smoke through the years, but as one court has noted "progressive deterioration of a patient's condition [does not] toll[ ] the statute of limitations." *Ferreri,* 1997 WL 580714 at *3. Moreover, unlike the plaintiff in *Wetherill* who claimed that she did not know the cause of her reproductive problems, John Jr. had for a long time linked his symptoms to cigarette

smoking.[5] Therefore, based upon all of the evidence in the record, the Court concludes that John Jr. knew not only the primary condition upon which his claims are based but the cause of that condition itself more than three years prior to the commencement of this action. Accordingly, the Court grants Defendant's motion for summary judgment with respect to John Jr.'s failure to warn claims, as well as the loss of consortium and punitive damages claims related to those causes of action.[6]

## B. Defendant's other motions

As noted above, Defendant also filed several other motions in addition to its motion for summary judgment. All of those motions are either related to Defendant's summary judgment motion or are relevant only if this action proceeds further. Since the Court granted Defendant's motion for summary judgment, however, there is no need for the Court to consider Defendant's other motions. Accordingly, the Court denies Defendant's motions (1) to sever Plaintiffs' claims and for a separate trial; (2) to exclude Dr. Pollay's testimony and to strike Plaintiffs' reference to her prior testimony; (3) to file under seal and *in camera* the affidavit of Robert McDermott; and (4) to strike the documents attached to the affidavit of Erin McKinley as moot.

## III. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**ORDERED** that Defendant's motion for summary judgment is **GRANTED;** and it is further

**ORDERED** that Defendant's motions (1) to sever Plaintiffs' claims and for a separate trial; (2) to exclude Dr. Pollay's testimony and to strike Plaintiffs' reference to her prior testimony; (3) to file under seal and *in camera* the affidavit of Robert McDermott; and (4) to strike the documents attached to the affidavit of Erin McKinley are **DENIED** as moot; and it is further

**ORDERED** that the Clerk of the Court is to enter judgment for Defendant and close this case.

---

5. The Court notes that even if John Jr. merely suspected that his symptoms were caused by smoking, once Congress required cigarette packages to warn that smoking caused emphysema in 1984, John Jr.'s suspicions were confirmed.

6. Since the Court has determined that all of Plaintiffs' claims are time-barred and, therefore, must be dismissed, it need not address the other bases for Defendant's motion for summary judgment.